# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
               Plaintiff,          :   Civil Action No. _____
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
FRONT YARD RESIDENTIAL                                :   **SECURITIES EXCHANGE ACT OF**
CORPORATION, ROCHELLE R. DOBBS,                       :   **1934**
LELAND ABRAMS, GEORGE G. ELLISON,                     :
MICHAEL A. ERUZIONE, LESLIE FOX,                      :   **JURY TRIAL DEMANDED**
WADE J. HENDERSON, LAZAR NIKOLIC,                     :
AND GEORGE WHITFIELD MCDOWELL,                        :
                                                      :
               Defendants.         :

---------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Front Yard Residential Corporation ("Front Yard or the "Company") and the members of the Front Yard's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed acquisition of Front Yard by affiliates of Amherst Residential, LLC ("Amherst").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 11, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Company will merge with and into BAF Sub, LLC, a Maryland limited liability company ("Merger Sub"), a direct wholly-owned subsidiary of BAF Holdings, LLC, a Delaware limited liability company (an affiliate of Amherst), with Merger Sub surviving the merger as a wholly-owned subsidiary of BAF Holdings, LLC (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Front Yard common share issued and outstanding will be converted into the right to receive $12.50 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Front Yard stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Deutsche Bank Securities Inc. ("Deutsche Bank"), in support of its fairness opinion, and relied upon by the Board in recommending that the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Front Yard stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Amherst and BAF Holdings, LLC were formed in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Front Yard common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Rochelle R. Dobbs has served as a member of the Board since December 2016 and has been the Chair of the Board since May 2018.

11.     Individual Defendant Leland Abrams has served as a member of the Board since June 2019.

12.     Individual Defendant George G. Ellison ("Ellison") has served as a member of the Board and the Company's Chief Executive Officer ("CEO") since June 2015. Ellison is also the

co-CEO of Altisource Asset Management Corporation ("AAMC"), a company with which Front Yard has an existing asset management agreement.

13.     Individual Defendant Michael A. Eruzione has served as a member of the Board since December 2012.

14.     Individual Defendant Leslie Fox has served as a member of the Board since 2019.

15.     Individual Defendant Wade J. Henderson has served as a member of the Board since April 2017.

16.     Individual Defendant Lazar Nikolic has served as a member of the Board since February 2017.

17.     Individual Defendant George Whitfield McDowell has served as a member of the Board since March 2018.

18.     Defendant Front Yard is incorporated in Maryland and maintains its principal offices at 5100 Tamarind Reef, Christiansted, United States Virgin Islands 00820. The Company's common stock trades on the New York Stock Exchange under the symbol "RESI."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

21.     Front Yard, formerly Altisource Residential Corporation, is a real estate investment trust (REIT). The Company focuses on acquiring, owning and managing single-family rental (SFR) properties throughout the United States. The Company conducts its activities through its subsidiary, Altisource Residential, L.P., and its subsidiaries. The Company also converts a portion

4

of the real estate owned (REO) properties that it acquires through resolution of its mortgage loans into SFR properties. The Company has also entered into property management service agreements with two third-party property managers: Altisource Portfolio Solutions, SA (ASPS) and Main Street Renewal, LLC (MSR), to provide, among other things, leasing and lease management, operations, maintenance, repair and property management services in respect of its SFR portfolios. As of August 9, 2018, the Company had approximately 15,000 homes.

22.     On February 18, 2020, Front Yard and Amherst jointly announced the Proposed Transaction:

> AUSTIN, Texas and CHRISTIANSTED, U.S. Virgin Islands, Feb. 18, 2020 (GLOBE NEWSWIRE) -- Amherst Residential, LLC ("Amherst Residential"), a privately-owned, vertically-integrated real estate firm, and Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), two industry leading providers of high-quality and affordable rental homes, announced today that the companies have entered into a definitive merger agreement, whereby Amherst Residential will acquire Front Yard in a transaction valued at approximately $2.3 billion, including debt to be assumed or refinanced.
>
> Under the terms of the agreement, Front Yard shareholders will receive $12.50 in cash per share. The per share purchase price represents a premium of approximately 14.2% over the per share closing price of Front Yard's common stock on May 20, 2019, the day prior to the public announcement of Front Yard's decision to initiate a formal process to explore strategic alternatives.
>
> "This transaction meaningfully advances our effort to improve the experience of residents and investors in single-family rental properties," said Sean Dobson, Chief Executive Officer and Chairman of the Board, Amherst Holdings, LLC. "With our expanded scale, additional team members in local markets and the collective experience of both teams, we believe this combination provides a powerful platform that is well positioned to serve the broad constituency focused on affordable, safe, attractive housing."
>
> "We are excited to join forces with Amherst in a transaction that we believe is in the best interests of our shareholders, employees and residents," said George Ellison, Front Yard's Chief Executive

Officer. "The transaction will deliver the certainty of immediate cash to our shareholders at a premium, and I am confident our platform and residents will benefit from being part of a larger, vertically-integrated organization. We look forward to completing this transaction and ensuring a seamless transition."

"This strategic acquisition grows our ability to optimize the ownership and utilization of U.S. single-family real estate. By combining with Front Yard, our increased scale will allow us to further enhance the services we provide to both individual consumers as well as our investment partners," said Drew Flahive, President of Amherst Residential. "We know the Front Yard team well and are pleased to welcome them as we continue to execute our differentiated single-family real estate strategies."

"After a thorough strategic review process, we have decided to enter into this agreement with Amherst, which we believe maximizes value for our shareholders," said Rochelle R. Dobbs, Front Yard's Chairwoman of the Board of Directors. "Amherst is a leader in the industry and a natural, strategic fit with Front Yard."

Amherst Residential is a subsidiary of Amherst Holdings, a data-driven real estate investment firm with strategies across the residential and commercial real estate capital markets. The firm delivers a full suite of products and services to both individual and institutional owners of single-family real estate. This transaction will expand Amherst Residential's nationwide SFR portfolio to more than 36,000 homes. At closing, Amherst Residential affiliates and subsidiaries will acquire Front Yard's operating platform and assets, including approximately 15,000 SFR homes, currently managed by Front Yard's operator, HavenBrook Homes. Beginning at closing, HavenBrook Homes' operations will be integrated with Main Street Renewal LLC, Amherst Residential's in-house operating company and the collective organization will retain the Main Street Renewal brand.

**Approvals and Timing**
The transaction is expected to close in the second quarter of 2020, subject to the approval of the holders of a majority of Front Yard's outstanding shares and the satisfaction of customary closing conditions.

The Front Yard Board of Directors has unanimously approved the merger agreement and intends to recommend that Front Yard shareholders vote in favor of it at a Special Meeting of Stockholders, to be scheduled as soon as practicable. As part of the transaction,

shareholders representing approximately 18% of Front Yard's voting stock have agreed to vote in favor of the transaction.

**Advisors**
Goldman Sachs & Co. LLC and Credit Suisse Securities (USA) LLC are serving as financial advisors to Amherst Residential and Gibson, Dunn & Crutcher LLP is serving as Amherst Residential's legal counsel.

Deutsche Bank Securities Inc. is serving as financial advisor to Front Yard and Weil, Gotshal & Manges LLP is serving as Front Yard's legal counsel.

\* \* \*

23.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction.  It is therefore imperative that Front Yard's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24.     On March 11, 2020, Front Yard filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Front Yard Financial Projections*

25.    The Proxy Statement fails to provide material information concerning financial projections prepared by Front Yard management and relied upon by Deutsche Bank in its analysis. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Front Yard management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.    For the Company Projections provided to Amherst, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2023: Rental Net Operating Income, Core Funds From Operations, and Adjusted Funds From Operations, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 41.

27.    When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

30.     With respect to Deutsche Bank's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Deutsche Bank in the analysis. Proxy Statement at 45-46.

31.     With respect to Deutsche Bank's *Discounted Cash Flow Analysis*, the Proxy Statement also fails to disclose: (i) the line items used to calculate the free cash flows estimated to be generated by the Company for the years 2020 to 2023; (ii) the inputs and assumptions

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

underlying the range of discount rates ranging from 7.0% to 8.5%; (iii) range of terminal values for the Company and the basis for applying a perpetual growth rate range between 2.5% and 3.0%; and (iv) the Company's after-tax cost of debt and net debt. Proxy Statement at 47.

32.     With respect to Deutsche Bank's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Deutsche Bank in the analysis. Proxy Statement at 47-48.

33.     With respect to Deutsche Bank's *Transaction Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Deutsche Bank in the analysis; and (ii) the premiums paid in the transactions.

34.     With respect to Deutsche Bank's *Present Value Analysis*, the Proxy Statement fails to disclose: (i) Deutsche Bank's basis for selecting Core FFO multiples of 16x to 20x; and (ii) the inputs and assumptions underlying the discount rate of 12% selected by Deutsche Bank.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Deutsche Bank and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Front Yard within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Front Yard, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Front Yard, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Front Yard, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 12, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*